IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.   11-1291-JTM |
| v. | ) | |
| | ) | |
| COFFEYVILLE RESOURCES | ) | |
| REFINING & MARKETING, | ) | |
| LLC, | ) | |
| Defendant. | ) | |

**ORDER ON DISCOVERY OF
ELECTRONICALLY STORED INFORMATION**

This is an environmental case in which the plaintiff, United States of America, seeks

millions of dollars in alleged cleanup costs and penalties from the defendant, Coffeyville

Resources Refining & Marketing, LLC.  Pursuant to the scheduling order entered on January

6, 2012 by the undersigned U.S. Magistrate Judge, James P. O'Hara (see doc. 17, pp. 4-5),

and consistent with Fed. R. Civ. P. 26(f), the parties' attorneys have tried to reach agreement

on protocols to recommend to the court for handling discovery of electronically stored

information (ESI).  Commendably, the parties have agreed on many items.  But there remain

some subjects on which the parties disagree.  On January 17, 2012, as directed by the court,

the parties jointly filed a report describing their points of agreement and disagreement, and

their competing rationale for the latter (see doc. 20).

The court has carefully reviewed the parties' report. This order reflects the court's substantial adoption of the parties' points of agreement, including but not limited to agreements under Fed. R. Evid. 502. This order also reflects the court's rulings on the disputed points.

## A.   Electronically Stored Information.

(1)   Discovery <u>Not</u> Required for Certain Categories of Discoverable Information.

(a)   Discovery shall <u>not</u> be required for the following categories of ESI for this litigation:

(i)   Data duplicated in any electronic backup system for the purpose of system recovery or information restoration, including but not limited to, system recovery backup tapes, continuity of operations systems, and data or system mirrors or shadows, if such data are routinely purged, overwritten, or otherwise made not reasonably accessible in accordance with an established routine system maintenance policy;

(ii)   Voicemail messages;

(iii)   Instant messages, such as messages sent on AOL Instant Messenger or Microsoft Communicator;

(iv)   Text messages, such as cell phone to cell phone SMS messages;

(v)   Electronic mail sent to or from a personal digital assistant (PDA) or smartphone (e.g., BlackBerry), provided that a copy of such email is routinely saved elsewhere;

(vi)    Other electronic data stored on a PDA or smartphone, such as calendar or contract data or notes, provided that a copy of such information is routinely saved elsewhere;

(vii)   Logs of calls made from cellular phones;

(viii)  Deleted computer files, whether fragmented or whole;

(ix)    Data stored in random access memory (RAM), cache memory, or in temporary or cache files, including internet history, web browser cache and cookie files, wherever located;

(x)     Data stored on photocopiers, scanners, and fax machines;

(xi)    Server, system, or network logs; and

(xii)   Electronic data temporarily stored by scientific equipment or attached devices, provided that the data that is ordinarily preserved as part of a laboratory report is, in fact, preserved in its ordinary location and form.

(b)     However, the parties shall adhere to all formal document or information preservation policies that apply to the various categories of information identified immediately above.

(2)     <u>Obligations Related to "Draft" Documents and "Non-Identical" Documents</u>. For the purposes of preserving potentially discoverable material in this litigation, and for purposes of discovery in this litigation, a "draft" document, regardless of whether it is in an electronic or hard copy form, shall mean, "a preliminary version of a document that has been shared by the author with another person (by email, print, or otherwise), or that the author

no longer intends to finalize or to share with another person." In addition, a "non-identical" document is one that shows at least one facial change such as the inclusion of highlights, underlining, marginalia, total pages, attachments, markings, revisions, or the inclusion of tracked changes.  The parties need not preserve for discovery a document before and after every change made to it, so long as "draft" documents, as defined by this paragraph, are preserved.  A document that is identical on its face to another document, but has small detectable differences in the metadata, shall be considered an identical copy.

(3)    <u>Preservation Does Not Affect Discoverability or Claims of Privilege</u>.  By preserving information for the purpose of this litigation, the parties are not conceding that such material is discoverable, nor are they waiving any claim of privilege.  Nothing in this order shall alter the obligations of the parties to provide a privilege log for material withheld under a claim of privilege.

(4)    <u>Other Preservation Obligations Not Affected</u>.  Nothing in this order shall affect any other obligations of the parties to preserve documents or information for other purposes, such as pursuant to court order, administrative order, statute, or in response to other pending or anticipated litigation.  In addition, nothing in this order shall eliminate or alter any party's obligation to retain native format copies, including associated metadata, of all documents produced in this litigation, together with the original hard copy documents for all paper discovery produced in this litigation.

(5)     <u>Meet and Confer Requirement</u>.  Before filing any motion with the court regarding electronic discovery or evidence, the parties shall meet and confer in a good faith attempt to resolve any such disputes.

(6)     <u>Format for Production</u>.

(a)     Ordinary paper documents:  Documents on 11 x 17 inch or smaller paper shall be scanned and produced on CD-ROM, DVD-ROM, or external hard drive. Documents shall be scanned as 300 dpi single-page TIFF files, using CCITT Group IV compression.  Each page shall be branded with a unique Bates number, which shall not be an overlay of the image.  The images shall be accompanied by: (1) an OpticonTM or IPRO® "cross reference file" which associates each Bates number with its corresponding single-page TIFF image file; and (2) a "text load file" containing comma delimited, double-quotation qualified ASCII text which will populate fields in a searchable flat database environment, containing one line for each document and each of the applicable fields as described in Appendix A to this order.

(b)     Word, WordPerfect, and PDF documents shall be converted to single-page TIFF images and produced consistent with the specifications in paragraph A.6.a, except that the text load file shall contain the extracted text from each document in place of OCR text, unless the document contains redactions, in which case OCR text may be provided. If the document contains comments or tracked changes, the TIFF images shall be generated based on how the document appears when first opened using view settings contained in the file.

(c)     Microsoft PowerPoint files shall be processed and produced in the same manner as Word, WordPerfect, and PDF documents, except that the images shall be generated as full color, full page, JPEG images with one slide per page.

(d)     E-mail and attachments should be converted to single-page TIFF images and produced consistent with the specification in paragraph A.6.a. If the producing party redacts any part of the e-mail before producing it, OCR text may be provided in place of extracted text. Attachments shall be processed as though they were separate documents, and the text load file shall include a field in which the producing party shall identify, for each e-mail, the Bates range of any attachment.

(e)     Microsoft Excel files and other spreadsheets shall be produced in native file format in a separate folder on the production media, and the text load file shall contain a field that identifies the file path of the native file corresponding to each document.

(f)     Digital photographs shall be produced as image files at their original resolution with Bates numbers branded onto them.

(g)     Embedded files shall be treated as though they were separate files, except that the text load file shall include a field in which the producing party shall identify, for each document containing an embedded file, the Bates range of any such embedded file. This Bates range may be identified in the same field as the Bates range of an e-mail attachment.

(h)     Before any party produces other kinds of electronic data, including databases, CAD drawings, GIS data, videos, etc., the parties shall meet and confer to discuss the format for the production.

(i)     The parties shall meet and confer periodically to formulate, validate and, if necessary, refine search terms, search protocols, date restrictions, and custodians for email messages and other ESI.

**B.      Protection of Privileges and Work Product Immunity.**

(1)     The parties' stipulations and this order invoke the protections afforded by Fed. R. Evid. 502.  As used in this order, "privilege" means both the attorney-client privilege and the work-product immunity doctrine.

(2)     The prosecution and defense of this action will require each party to review and to disclose, through the discovery process, potentially large quantities of information and documents, including ESI.  As a result, record-by-record pre-production privilege review would likely impose an undue burden on the parties' resources.

(3)     Each party shall examine the files containing documents to be produced and shall screen documents for privilege.  Such examination shall be performed with due regard for the likelihood that the files contain privileged documents.  It may involve record-by-record review of potentially privileged documents.  But it may also involve or rely on sampling or electronic searching.

(4)     If a producing party determines that it has produced a document upon which it wishes to make a claim of privilege, the producing party shall within 30 days give all

counsel of record notice of the claim of privilege. The notice shall identify the document(s) that is (are) privileged and the date the document(s) was (were) produced. If the producing party claims that only a portion of the document is privileged, the producing party shall provide, along with the notice of the claim of privilege, a new copy of the document with the allegedly privileged portions redacted.

(5)     A receiving party is under a good-faith obligation to notify the producing party upon identification of a document which appears on its face or in light of facts known to the receiving party to be potentially privileged. Such notification shall not waive the receiving party's ability to subsequently challenge any assertion of privilege with respect to the identified document. The producing party shall provide notice under paragraph B.4 above within 5 business days of notification of production of a potentially privileged document by the receiving party if the producing party believes the document to be privileged.

(6)     Upon receiving notice of a claim of privilege on a produced document, the receiving party must, in accordance with Fed. R. Civ. P. 26(b)(5)(B), promptly sequester the specified information and any copies it has and may not use or disclose the information, except as provided by Fed. R. Civ. P. 26(b)(5)(B), until the claim is resolved. If the receiving party disclosed the information before being notified, it must take reasonable steps to prevent further use of such information until the claim is resolved. The parties shall follow the procedure described in Fed. R. Civ. P. 26(b)(5)(B) for documents produced in this litigation regardless of whether the producing party asserts its claim of privilege during or after this litigation.

(7)    Pursuant to Fed. R. Evid. 502(d), the disclosure of privileged information or documents in discovery conducted in this litigation consistent with the terms of the parties' stipulation and this order, and shall not waive the claim of privilege or protection in any other federal or state proceeding.

## C.    <u>Non-Logging of Certain Privileged Materials.</u>

In response to discovery requests, the parties shall <u>not</u> have to include on their privilege logs certain privileged paper or electronic documents that were either (1) written by counsel or legal staff of one party and primarily addressed to other counsel, legal staff, client officials, or non-testifying consultants of the same party; or (2) written by counsel, legal staff, client officials, or non-testifying consultants of one party and primarily addressed to that party's counsel or legal staff.  For the purposes of this order, legal staff includes those individuals whose primary responsibilities involve legal matters under the supervision of counsel, such as law clerks, summer associates, paralegals, legal assistants, and secretaries. Documents "primarily addressed to" counsel or legal staff means that: (1) counsel or legal staff members are the only recipients of the document; or (2) the name of counsel or legal staff appears immediately after the "To" line or salutation of the document even if non-counsel or non-legal staff members are also listed as addressees or copies of the document. A document that is primarily addressed to non-counsel or non-legal staff members on which counsel or a legal staff member is merely copied or "cc'd" is <u>not</u> exempt from logging.  This order does not make documents "addressed primarily to" or authored by counsel or legal staff

members privileged but merely provides that if such documents are in fact privileged they need not be included on a party's privilege log.

**D.      Costs of Document Production.**

Unless the court orders otherwise for good cause shown as relates to <u>specific</u> ESI, each party shall bear (or at least advance initially) all of the costs of preserving, collecting, processing, reviewing, and producing its own documents. The court notes but respectfully overrules defendant's objection in the parties' joint report that producing ESI in TIFF format (instead of PDF) would be too costly. Significantly, defendant has provided no cost estimates or comparisons, and thus its arguments in this regard are unpersuasive.

As indicated in the court's scheduling order (doc. 17, p. 7), as relates to all "written discovery" in this case, to avoid getting bogged down with overly broad requests and frivolous objections, the parties and counsel should bear in mind that the court intends to strictly enforce Fed. R. Civ. P. 26(g). *See also Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 355-65 (D. Md. 2008). Hopefully Rule 26(g) alone will serve as sufficient disincentive for either party to make any unduly broad or disproportionate requests for ESI that will result in undue expense. If it does not, then of course the objecting party is free to file a timely (early) motion asking the court to rein in the specific discovery in question as disproportionate. *See* Fed. R. Civ. P. 26(b)(2)(C). In any event, the parties and counsel are forewarned that some or all of the costs of ESI discovery may, under 28 U.S.C. § 1920(4) and Fed. R. Civ. P. 54(d)(1), be taxed against the losing party at the conclusion of this case. *See, e.g., Paradigm Alliance, Inc. v. Celeritas Tech., L.L.C.*, No. 07-1121-EFM, 2011 WL

3849724, at *1 (D. Kan. Aug. 30, 2011); *B&B Hardware, Inc. v. Fastenal Co.*, No. 4:10-cv-00317, 2011 WL 6829625, at *7 (E.D. Ark. Dec. 16, 2011); *Advance Brands, LLC v. Alkar–Rapidpak, Inc.*, No. 08–cv–4057, 2011 WL 4352495, at *6 (N.D. Iowa Sept. 15, 2011); *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, No. 2:07–cv–1294, 2011 WL 1748620, at *6 & n.6 (W.D. Pa. May 6, 2011).  The court therefore expects that each party will work to ensure that costs are kept in check by taking a reasonable and targeted approach to e-discovery, lest it be the one taxed on the full amount of the bill.

IT IS SO ORDERED.

Dated January 18, 2012, at Kansas City, Kansas.


　s/ James P. O'Hara　　　　　
James P. O'Hara
U.S. Magistrate Judge

| FIELD Heading | E-mail | Attachment | Description |
|---|---|---|---|
| *Begin Bates | yes | yes | |
| *End Bates | yes | yes | |
| Attachment | yes | yes | emails w/attachments, include Bates attachment range |
| Pages (optional) | | | |
| Custodian | yes | yes | individual from whom the file is collected |
| To | yes | | |
| From | yes | | |
| CC | yes | | |
| BCC | yes | | |
| Subject | yes | | |
| Sent Date | yes | | |
| Create Date | | yes | |
| Modified Date | | yes | |
| File Name | | yes | attachments and loose files and includes file format, i.e., .xls, .dcb |
| Message ID | yes | | Outlook, Lotus Notes (UNID) |
| MD5Hash | | yes | |
| EXTRACTED TEXT | yes | yes | from Native files |
| *OCR | yes | yes | from scanned documents or redacted files |
| Native File | | | Excel spreadsheets, Access databases, etc., as agreed |

* scanned paper documents

ESI, metadata and data from electronic file collections, i.e. emails, attachments to emails, loose electronic files