SEAN CARMAN
ELIZABETH LOEB
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Telephone:  (202) 514-2746
Facsimile:   (202) 616-6583
Sean.Carman@usdoj.gov

BARRY R. GRISSOM
United States Attorney
District of Kansas

EMILY METZGER
Assistant United States Attorney
Kansas State Bar No. 10750
1200 Epic Center, 301 N. Main
Wichita, Kansas 67202
Telephone:  (316) 269-6481
Facsimile: (913) 551-6541

UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 11-CV-1291-JTM-JPO |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | **CONSENT DECREE** |
| COFFEYVILLE RESOURCES | ) | |
| REFINING & MARKETING, LLC | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

WHEREAS Plaintiff the United States of America, on behalf of the United States

Environmental Protection Agency (EPA) has filed a Complaint in this action asserting a claim

against Defendant Coffeyville Resources Refining & Marketing, LLC (CRRM or Defendant) for

penalties and injunctive relief under the Risk Management Program regulations (40 C.F.R. Part 68) and requirements under the Section 112(r) of the Clean Air Act (CAA), 42 U.S.C. § 7412 (r).

WHEREAS, the Program, Vessel and HF audits required to be performed by Defendant pursuant to Paragraphs 16, 18 and 19 of this Consent Decree are not required by Risk Management Program regulations promulgated under Section 112 (r) of the Clean Air Act, 42 U.S.C. § 7514.

WHEREAS the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.  JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of the United States' claims in this action and over the parties pursuant to 28 U.S.C. §§ 1331, 1345, and 1355; and Section 113(b) of the CAA, 42 U.S.C. § 7413(b).  The Court has personal jurisdiction over the parties to this action.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), (c), and 1395(a); and Section 113(b) of the CAA, 42 U.S.C. § 7413(b), because Defendant does business in this District and the events giving rise to the claims alleged herein occurred in this District.

2.      For purposes of this Consent Decree, Defendant agrees that the Complaint states claims upon which relief may be granted pursuant to Sections 112(r) and 113 of the Clean Air Act, 42 U.S.C. §§ 7412(r), 7413.

## II.  APPLICABILITY

3.      The obligations of this Consent Decree apply to and are binding upon the United

States and Defendant and upon any successors or assigns of either.

4.      Defendant shall give written notice of, and shall provide a copy of, this Consent Decree to any prospective purchaser prior to the transfer of ownership or operation of any portion of the Refinery.  Defendant shall notify the United States, in accordance with the notice provisions set forth in Section XV (Notices), of any change in ownership or operation of the Refinery at least thirty (30) days prior to any such transfer of ownership or operation of the Refinery.

5.      At any time, Defendant may request that the United States agree to a transferee's assumption of any or all of the obligations of the Consent Decree.  To do so, Defendant shall notify the United States of the proposed transfer and of the specific Consent Decree provisions that CRRM proposes the transferee assume and certify that the transferee has agreed to be contractually bound to assume the obligations and liabilities of this Consent Decree; and the transferee shall submit to the United States a certification and supporting documentation showing that the transferee has the financial and technical ability to assume the obligations and liabilities of this Consent Decree and a certification that the transferee has agreed to be contractually bound to assume the obligations and liabilities of this Consent Decree.

6.      By no later than forty-five (45) days after the submission to the United States of the notice and certification required by the previous Paragraph:

a.      the United States shall notify Defendant that it does not agree to modify the Consent Decree to make the transferee responsible for complying with the terms and conditions of the Consent Decree; or

b.      the United States shall notify Defendant that it agrees to modify the Consent Decree to make the transferee responsible for complying with the terms and conditions of the Consent Decree, in which case the United States, Defendant, and the transferee shall file

with the Court a joint motion requesting the Court to approve a modification substituting the transferee for CRRM as the Defendant responsible for complying with the terms and conditions of the Consent Decree.

7.      If CRRM does not secure the agreement of the United States to a joint motion to transfer the Consent Decree obligations to the third party within forty-five (45) days after submitting its request, then CRRM may file, without the agreement of the United States, a motion requesting the Court to approve a modification substituting the transferee for CRRM as the Defendant responsible for complying with some or all of the terms and conditions of the Consent Decree.  The United States may file an opposition to the motion.  Such a motion shall be granted if CRRM and the transferee:

        a.      demonstrate that the transferee has the financial and technical ability to assume the obligations and liabilities of the Consent Decree; and

        b.      demonstrate that the modification language effectively transfers the obligations and liabilities to the transferee.

8.      Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties include implementing any provision of this Decree.  Defendant shall also provide to any contractor retained to perform work required under this Consent Decree with the provisions of the Consent Decree that are relevant to the work that contractor is performing.  Defendant shall require its contractors who perform such work to perform their work in conformity with the terms of this Consent Decree.

9.       Defendant agrees not to contest the validity of the Consent Decree in any subsequent proceeding to implement or enforce its terms.

10.     Except as provided by Section XI (Force Majeure), in any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers,

directors, employees, agents or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

### III.  OBJECTIVES

11.     It is the purpose of the Parties to this Consent Decree to further the objectives of Section 112(r) of the Clean Air Act, 42 U.S.C. § 7412(r).

### IV.  DEFINITIONS

12.     Terms used in this Consent Decree that are defined or used in the CAA or in regulations promulgated thereunder, shall have the meanings assigned to them in such statute or such regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

   a.   "Complaint" shall mean the complaint filed by Plaintiff in this action, unless noted otherwise.

   b.   "Consent Decree" or "Decree" shall mean this Decree and all appendices attached hereto.

   c.   "Covered Process" shall mean "a process that has a regulated substance present in more than a threshold quantity as determined under 40 C.F.R. § 68.115." 40 C.F.R. § 68.3.

   d.   "Day" shall mean a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day.

   e.   "Date of Lodging" shall mean the day that this Consent Decree is lodged with the Court for the public comment period.

   f.   "Defendant" shall mean Coffeyville Resources Refining & Marketing, LLC.

   g.   "Effective Date" shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

   h.   "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

i.   "Interest" shall mean interest at the rate specified in 28 U.S.C. § 1961.

j.   "NFPA" shall mean the National Fire Protection Association.

k.   "Paragraph" shall mean a portion of this Decree identified by an Arabic numeral.

l.   "Parties" shall mean the United States and Defendant.

m.   "Plaintiff" shall mean the United States.

n.   "Refinery" shall mean the refinery presently owned and operated by Defendant at 400 North Linden Street, Coffeyville, Kansas.

o.   "Regulated Substance(s)" shall mean "any substance listed pursuant to section 112(r)(3) of the Clean Air Act, as amended, in 40 C.F.R. § 68.130."  40 C.F.R. § 68.3.

p.   "Section" shall mean a portion of this Decree identified by a Roman numeral.

q.   "Termination Date" shall mean the date this Consent Decree terminates as provided by Section XVIII of this Consent Decree.

r.   "United States" shall mean the United States of America, acting on behalf of EPA.

s.   "Vessel" shall mean "any reactor, tank, drum, barrel, cylinder, vat, kettle, boiler, pipe, hose, or other container."  40 C.F.R. § 68.3

## V.  PAYMENT

13.   Within thirty (30) Days after the Effective Date of this Consent Decree, Defendant shall pay the sum of $300,000 plus Interest accrued from the Date of Lodging as a civil penalty for alleged violations of Risk Management Program requirements promulgated under Section 112(r) of the Clean Air Act, 42 U.S.C. § 7514(r).  Defendant shall pay this civil penalty and Interest by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided to Defendant, following lodging of the Consent Decree, by the Financial Litigation Unit of the U.S. Attorney's Office for the District of Kansas.  Any payments received by the Department of Justice after 4:00 pm Eastern Time shall be credited on the next business day.  At the time of payment, Defendant shall send a

copy of the EFT authorization form and the EFT transaction record, together with a transmittal

letter, which shall state that the payment is for the Clean Air Act civil penalty owed pursuant to

the Consent Decree in <u>United States v. Coffeyville Resources Refining & Marketing, LLC</u>, and

shall reference the civil action number and DOJ case number 90-5-1-2-07459/2, to the United

States in accordance with Section XV of this Decree (Notices); by email to

<u>acctsreceivable.CINWD@epa.gov;</u> and by mail to:

> EPA Cincinnati Finance Office
> 26 Martin Luther King Drive
> Cincinnati, Ohio 45268

14.     Defendant shall not deduct the penalty paid under this Decree pursuant to this

Section or Section X (Stipulated Penalties) in calculating its federal income tax.

## VI.     COMPLIANCE

15.     Defendant shall comply with all Risk Management Program statutory and

regulatory requirements under 42 U.S.C. § 112(r) and the regulations promulgated thereunder at

40 C.F.R. Part 68.  The United States may seek injunctive relief for violations of this paragraph

of the Consent Decree through a motion to enforce the Consent Decree but may not seek

stipulated or statutory civil penalties under this Consent Decree for violations of this Paragraph.

The United States may seek statutory civil penalties for violations of this paragraph, 42 USC

§ 112(r) and the regulations promulgated thereunder, except as provided in Paragraphs 63 and 64

of this Consent Decree, in a separate legal proceeding, in accordance with its enforcement

authority under the Clean Air Act, Section 113, 42 USC 7413(b).

16.     <u>Risk Management Program Compliance Review and Audits.</u>

a.     Defendant shall retain a third-party contractor with expertise in the CAA

Risk Management Program requirements who shall conduct a comprehensive audit of the

Refinery's compliance with the CAA Risk Management Program requirements of 40 C.F.R.

Part 68 (Program Audit) no later than 240 days after the Effective Date.

      b.     The Program Audit shall include, but not be limited to:

      (1).     Safe Upper and Lower Limits.  A review of the safe upper and

lower limits (as specified in 40 C.F.R. § 68.65(c)(1)(iv)) for all Covered Processes, including but

not limited to the Alkylation Unit.

      (2).     Piping and Instrumentation Diagrams.  A review of the

Defendant's procedures for ensuring that Piping and Instrumentation Diagrams (P&IDs) are

updated to reflect current operating configurations.  Defendant shall ensure that P&IDs for each

Covered Process are updated prior to the PHA revalidation for that Covered Process.

      (3).     Operating Procedures.  A review of all written operating

procedures for Covered Processes to ensure they include emergency shutdown procedures,

operating limits, and consequences of deviations.

      (4).     The 2011 Compliance Audit.  A review of the status of each

finding in the 2011 Compliance Audit, including any deficiencies that have not been corrected.

CRRM shall document as part of the Program Audit Report submitted pursuant to Paragraph 17,

a summary of each finding identified in the 2011 Compliance Audit, and a synopsis of the

resolution of each finding, including any deficiencies.  For any deficiencies that have not been

corrected, a summary of the steps to be taken to correct the deficiency as of the date of the

Program Audit Report and a schedule for resolution of each open finding.

      17.     Within ninety (90) days of the completion of the Program Audit, Defendant shall

submit to EPA a Program Audit Report that includes: (1) a copy of the auditor's complete report

to Defendant; and (2) Defendant's proposed actions and schedule for addressing any audit

findings of non-compliance; and (3) the information indicated in Paragraph 16.b. above regarding the 2011 Compliance Audit.

18.     <u>Vessel Audit.</u>  Defendant shall retain a third-party contractor with expertise in American Petroleum Institute (API) vessel inspections (other than the contractor who wrote the October 15, 2008 inspection report for Sphere 1016) who shall complete a comprehensive audit of the Refinery's inspection procedures for Vessels that contain any RMP Regulated Substance within an RMP Covered Process (Vessel Audit) no later than 240 days after the Effective Date.

a.      The Vessel Audit shall:

(1)     Review the existing inspection procedures for all vessels subject to the Vessel Audit for consistency with current industry standards (API 510 and 570);

(2)     For each vessel subject to the Vessel Audit, evaluate and recommend the dates of the next internal, external, and on-stream inspection, considering the time frames identified in API standards, end of life calculations based on short term, long term, and localized corrosion rates, and, if applicable, a fitness for service evaluation;

(3)     Review the inspection documentation practices to ensure that documentation of each inspection or test identifies: (i) the date of the inspection or test; (ii) the name of the person who performed the inspection or test, the serial number or other identifier of the equipment on which the inspection or test was performed; (iii) a description of the inspection or test; and (iv) the results of the inspection or test; and

(4)     Determine whether the recommendation(s) from the 2005, October 15, 2008 and April 13, 2009 inspection reports for bullets and spheres have been implemented.

b.      Defendant shall update its inspection schedule within ninety (90) days of the conclusion of the Vessel Audit and conduct inspections in accordance with the auditor's recommendation under Subparagraph 18.a.(2) above.

c.      Within ninety (90) days of completion of the Vessel Audit, Defendant shall submit to EPA the Vessel Audit Report that contains (1) a complete copy of the auditor's Vessel Audit report; (2) Defendant's proposed actions for addressing any audit findings of not meeting minimum industry standards and a schedule for implementing such actions; and (3) Defendant's schedule to address any recommendation(s) from the 2005, October 15, 2008 and April 13, 2009 inspection reports for bullets and spheres that have not been implemented.

19.     <u>Hydrofluoric Acid Audit</u>.  No later than 240 days after the Effective Date, Defendant shall use internal resources and retain a third-party contractor with expertise in the use of hydrofluoric acid in alkylation processes to audit the Refinery's hydrofluoric acid alkylation unit against API RP 751 ("HF Audit").  Within ninety (90) days of completion of the HF Audit, Defendant shall submit to EPA an HF Audit Report that shall identify audit findings of non-compliance with API RP 751 and a schedule for correcting audit findings of non-compliance.

20.     <u>Implementation of Actions Necessary to Correct Non-Compliance</u>.  If the audits conducted pursuant to Paragraphs 16-19 above identify any area of non-compliance with the Risk Management Program Requirements of the CAA or the regulations promulgated thereunder, Defendant shall implement all steps necessary to correct and/or otherwise address such area(s) of non-compliance within a reasonable time considering the circumstances but no later than October 1, 2016.

21.     <u>Risk Management Plan Update</u>.   No later than ninety (90) days after the Effective Date, Defendant shall update its Risk Management Plan to:

a.      identify Elk City State Park & Wildlife Area, Montgomery County State Park, Big Hill Wilderness Area, and Oologah Wildlife Management Areas as "environmental receptors" if they are within the end point distance of the offsite consequence analysis.

b.      include all RMP Regulated Substances in flammable mixtures with a NFPA rating of 4.

c.      include any planned changes (specific actions) to improve safety at the facility in the Executive Summary, in accordance with 40 C.F.R. 68.155(f).

22.    <u>Compliance with Generally Accepted Good Engineering Practices</u>.

a.       No later than 270 days after the Effective Date, Defendant shall install a hydrofluoric acid (HF) detection system on the east side of the Alkylation Unit, consistent with the requirements of API 751.

b.      Beginning no later than sixty (60) days after the Effective Date, Defendant shall provide written notice to any entity that receives scrap metal from the Alkylation unit potentially contaminated with HF advising the recipient of the hazards of hydrofluoric acid.

23.    <u>Process Hazard Analysis</u>.

a.      No later than June 18, 2012, Defendant shall complete a Process Hazard Analysis ("PHA") using the Hazard and Operability Study ("HazOp") methodology for the Alkylation unit.  This PHA shall fully address all elements set forth in 40 C.F.R. § 68.67, including but not limited to: 1) stationary source siting; 2) the consequences of failure of engineering and administrative controls; and 3) the identification of any previous incident which had a likely potential for catastrophic consequences, specifically including the July 2007 HF contactor release incident.

b.      No later than December 18, 2012, Defendant shall submit to EPA a schedule to address recommendations of the PHA and describe the actions taken to address all recommendations of the PHA.

c.     Defendant shall implement any recommendation identified in the PHA in accordance with the time frame set forth in its risk ranking protocols, but in no event later than October 1, 2016.

24.     Permits.  Where any compliance obligation under this Consent Decree requires Defendant to obtain a federal, state, or local permit or approval, Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

25.     Review and Approval.  Notwithstanding the review or approval by any agency of the United States of any plans, reports, policies or procedures formulated pursuant to the Consent Decree, Defendant will remain solely responsible for compliance with the terms of the Consent Decree, all applicable permits, and all applicable federal, state, regional, and local laws and regulations, except as provided in Section XI (Force Majeure).

## VIII.  REPORTING REQUIREMENTS

26.     Defendant shall submit semi-annual progress reports under the Consent Decree beginning on September 1, 2013 unless the Effective Date falls ninety (90) days or less before the first reporting date, in which case the first semi-annual report shall be due on the next reporting date.  The semi-annual reports shall provide an update on Defendant's progress in implementing each requirement of this Consent Decree.

27.     Whenever any violation of this Consent Decree or Defendant's implementation of the Consent Decree may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify EPA orally or by electronic transmission as soon as possible, but no later than twenty-four (24) hours after Defendant first knew of the violation or event.  This procedure is in addition to any reporting requirements under applicable law.

28.     All reports shall be submitted to the persons designated in Section XV of this

Consent Decree (Notices).

29.     Each report submitted by Defendant under this Section shall be signed by the

Refinery Vice President and General Manager or the individual designated by the Refinery to act

on behalf of the Vice President and General Manager and include the following certification:

> I certify under penalty of law that this document and all attachments were
> prepared under my direction or supervision in accordance with a system designed
> to assure that qualified personnel properly gather and evaluate the information
> submitted.  Based on any personal knowledge I may have and my inquiry of the
> person or persons who manage the system, or those persons directly responsible
> for gathering the information, the information submitted is, to the best of my
> knowledge and belief, true, accurate, and complete.  I am aware that there are
> significant penalties for submitting false information, including the possibility of
> fine and imprisonment for knowing violations.

30.     This certification requirement does not apply to emergency notifications where

compliance would be impractical.

31.     The reporting requirements of this Consent Decree do not relieve Defendant of

any reporting obligations required by any federal, state, or local law, regulation, permit, or other

requirement.

32.     Any information provided pursuant to this Consent Decree may be used by the

United States in any proceeding to enforce the provisions of this Consent Decree and as

otherwise permitted by law.

### IX.  INFORMATION COLLECTION, RECORDKEEPING AND RETENTION

33.     The United States and its representatives, including attorneys, contractors, and

consultants, shall have the right of entry into any facility covered by this Consent Decree upon

presentation of credentials, to:

> a.     monitor the progress of activities required under this Consent Decree;

b.      verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

c.      obtain samples and, upon request, splits of any samples taken by Defendant or its representatives, contractors, or consultants;

d.      obtain documentary evidence, including photographs and similar data; and

e.      assess Defendant's compliance with this Consent Decree.

34.     Upon request, Defendant shall provide EPA or its authorized representatives splits of any samples taken by Defendant.  Upon request, EPA shall provide Defendant splits of any samples taken by EPA.

35.      Until five (5) years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under this Consent Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United States, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.  Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Defendant asserts such a privilege it shall so notify the United States in writing and, upon request, it shall provide the following information to the United States: (1) the title of the document, record, or information; (2) the date of the document, record,

or information; (3) the name and title of each author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Defendant.  However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.  Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

36.    At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States at least ninety (90) Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph, and, upon request by the United States, Defendant shall deliver any such documents, records, or other information to EPA.  If the United States does not request retention of the records, the Defendant has no obligation to retain such records.

37.    This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

38.    Nothing in this Consent Decree shall limit the authority of EPA to conduct tests, inspections, or other activities under any statutory or regulatory provision.

# X.  STIPULATED PENALTIES

## A.      General Provisions Regarding Stipulated Penalties.

39.      Defendant shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section XI (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Decree according to all applicable requirements of this Decree and within the time frames specified in this Consent Decree.  Upon the Effective Date of this Decree, the stipulated penalty provisions shall be retroactively enforceable with regard to any violations of the Consent Decree that occurred prior to the Effective Date of the Consent Decree, provided that stipulated penalties that accrued prior to the Effective Date may not be collected unless and until this Consent Decree is entered by the Court.

40.      Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

41.      Defendant shall pay any stipulated penalty within thirty (30) Days of receiving the United States' written demand, subject to the Dispute Resolution provisions of the Consent Decree.

42.      The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

43.      During any Dispute Resolution, stipulated penalties shall accrue and need be paid as provided by Paragraph 56.

44.      Defendant shall pay stipulated penalties owing to the United States in the manner set forth in paragraph 13, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

45.     If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for Interest on such stipulated penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

46.     Subject to the provisions of Section XIII of this Consent Decree (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendant's violation of this Consent Decree or applicable law.  Where a violation of this Consent Decree is also a violation of the Clean Air Act, Defendant shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation. Notwithstanding the foregoing, the United States reserves all its rights to pursue, under the Consent Decree and/or outside of it, any other non-monetary remedies to which it is legally entitled, including but not limited to injunctive relief for violations of the Consent Decree.

**B.      Specific Stipulated Penalties**

47.     <u>Failure to Pay or Late Payment of Civil Penalty required by Paragraph 13</u>.  If Defendant fails to pay the civil penalty required to be paid under Section V of this Decree (Payments) when due, Defendant shall pay a stipulated penalty of $2,500 for each Day that the payment is late.

48.     <u>Failure to Comply with Risk Management Program Compliance Requirements under the Clean Air Act set forth in Paragraphs 16-23</u>:

        a.      <u>Failure to Conduct an Audit or the PHA in Accordance with Paragraphs 16, 18, 19, and 23 or Comply with Generally Accepted Good Engineering Practices as required by Paragraph 22</u>:

| Number of Days Late or Deficient | Penalty Per Day Per Violation |
|---|---|
| 1-30 | $1,000 |
| 31 days and beyond | $2,500 |

      b.      <u>Failure to Correct a Finding Of Non-Compliance with Risk Management</u>

<u>Program Regulations or Inconsistency with Industry Standards in an Audit or in the PHA as</u>

<u>Required by Paragraphs 20 and 23</u>:

| Number of Days Late or Deficient | Penalty Per Day Per Violation |
|---|---|
| 1-30 | $1,000 |
| 31-59 | $2,000 |

      c.      <u>Failure to Update the Risk Management Plan as Required by Paragraph 21</u>

<u>or Failure to Submit Complete Audit Report as Required by Paragraphs 17, 18.c. and 19</u>:

| Number of Days Late or Deficient | Penalty Per Day Per Violation |
|---|---|
| 1-30 | $500 |
| 31-59 | $1,000 |
| 60 and beyond | $2,000 |

      49.      <u>Failure to Comply with Any Requirement of this Consent Decree for which</u>

<u>Stipulated Penalties are Not Specifically Set Forth Above other than Paragraph 15</u>:

| Number of Days Late or Deficient | Penalty Per Day Per Violation |
|---|---|
| 1-59 | $500 |
| 60 and beyond | $850 |

## XI. FORCE MAJEURE

50.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors, which delays or prevents the performance of any obligation under this Consent Decree despite the Defendant's best efforts to fulfill the obligation.  The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible.  "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

51.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendant shall provide an initial notice orally or by electronic mail to the United States within seven (7) days of when the Defendant first knew that the event might cause a delay.  Within fourteen (14) days thereafter, the Defendant shall provide in writing to the United States a detailed explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; the Defendant's rationale for attributing such delay to a force majeure event if it intends to

assert such a claim; and a statement as to whether, in the opinion of the Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment.  The Defendant shall include with this written force majeure notice all documentation then available supporting the claim that the delay was attributable to a force majeure event.  Failure to comply with the above requirements shall preclude the Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure.  Defendant shall be deemed to know of any circumstance of which the Defendant, any entity controlled by Defendant or Defendant's contractors knew or should have known.

52.     If the United States agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation.  The United States will notify the Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

53.     If the United States does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, or needs further information from Defendant regarding the asserted force majeure event to make a decision, it will notify the Defendant in writing of its decision within sixty (60) days of the Defendant's written notice.  If it does not so notify Defendant, the request for an extension shall be deemed denied and Defendant may invoke dispute resolution pursuant to the following paragraph.

54.     If Defendant elects to invoke the dispute resolution procedures set forth in Section XII (Dispute Resolution), it shall do so no later than thirty (30)  days after receipt of the

United States' notice pursuant to Paragraph 53 above.  In any such proceeding, the Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that the Defendant complied with the requirements of Paragraphs 50-51 above.  If the Defendant carries this burden, the delay at issue shall be deemed not to be a violation by the Defendant of the affected obligation of this Consent Decree identified to the United States and the Court.

## XII.  DISPUTE RESOLUTION

55.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  Defendant's failure to seek resolution of a dispute under this Section shall preclude it from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendant arising under or with respect to this Decree.

56.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of the Defendant under this Consent Decree, unless the Court or the final resolution of the dispute so provides.  Stipulated penalties shall continue to accrue during any period of Dispute Resolution, as provided in sub-paragraphs a. through c. below but need not be paid until the following:

a.      If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, the Defendant shall pay accrued penalties determined to be owing, together with Interest, within forty-five (45) Days of the effective date of the agreement or the receipt of EPA's decision or order.

b.      If the dispute is appealed to the Court and the United States prevails in

whole or in part, the Defendant shall pay all accrued penalties determined by the Court to be owing, together with Interest, within sixty (60) Days of receiving the Court's decision or order, except as provided in Subparagraph c, below, provided however, that stipulated penalties shall not accrue during the time period between 120 days from the date the dispute is fully briefed before the Court under Paragraphs 60-61 and the date the Court issues a decision on the dispute.

        c.      If any Party appeals the District Court's decision, the Defendant shall pay all accrued penalties determined to be owing, together with Interest, within fifteen (15) Days of receiving the final appellate court decision, provided however, that stipulated penalties shall not accrue during the time period 190 days from the date the dispute is fully briefed before the Court of Appeals and the date the Court issues a decision on the dispute.

        57.     <u>Informal Dispute Resolution</u>.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Defendant sends the United States a written Notice of Dispute.  Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed forty-five (45) Days from the date the dispute arises, unless that period is modified by written agreement by the Parties.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within forty-five (45) Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

        58.     <u>Formal Dispute Resolution</u>.  Defendant shall invoke formal dispute resolution procedures, within the time period provided in Paragraph 57 above, by serving on the United States a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

59.     The United States shall send its Statement of Position within forty-five (45) Days of receipt of Defendant's Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

60.     Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XV of this Consent Decree (Notices), a motion requesting judicial resolution of the dispute.  The motion must be filed within forty-five (45) Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph.  The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

61.     The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court.  Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

62.     <u>Standard of Review</u>.  In any dispute brought under Paragraphs 60-61, Defendant shall bear the burden of demonstrating that its position complies with this Consent Decree and that Defendant is entitled to relief under applicable principles of law.

### XIII.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

63.     This Consent Decree resolves the civil Clean Air Act claim of the United States for the violations alleged in the Complaint filed in this action through the Date of Lodging.

64.     Entry of this Consent Decree also resolves the civil liability of Defendant to the United States for violations of Risk Management Program requirements in Section 112(r)(7) of the Clean Air Act and the regulations promulgated thereunder that are alleged in the Complaint and/or both identified in an audit conducted pursuant to Paragraphs 16-19, and 23 and fully and timely corrected by Defendant in accordance with Paragraph 20 and 23 above.

65.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraphs 63-64.  This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the CAA, or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraphs 63-64.  The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, the Refinery, whether related to the violations addressed in this Consent Decree or otherwise.

66.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, or other appropriate relief relating to the Refinery or Defendant's violations.  Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraphs 63-64 of this Section.

67.     This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations.  Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations,

and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of Section 112(r) of the Clean Air Act, 42 U.S.C. § 7412(r) or the regulations promulgated thereunder, or with any other provisions of federal, state, or local laws, regulations, or permits.

68.     This Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

69.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XIV. <u>COSTS</u>

70.     The Parties shall bear their own costs of this action, including attorneys fees, except that the United States shall be entitled to collect the costs (including attorneys fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

## XV. <u>NOTICES</u>

71.     Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

72.     <u>Notices and Submissions to the United States</u>:  Where this Consent Decree requires that notices and submissions are to be made to the United States they shall be made to

the United States Department of Justice and EPA.  Where the Consent Decree Requires that

Notices and Submissions shall be made to EPA, they need only be sent to EPA.  Where this

Consent Decree requires that notices and submissions shall be made to EPA, they need only be

sent to the designated EPA offices set forth below.  Except as otherwise provided herein, all

reports, notifications, certifications, or other communications required under this Consent Decree

to be submitted or sent to the United States, EPA, and/or Defendant shall be addressed as

follows:

**As to the United States:**

**U.S. Department of Justice**

Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044-7611
Reference Case No. 90-5-2-1-07459/1

**EPA Region 7:**

Chief, Chemical Risk Information Branch
EPA Region 7
11201 Renner Blvd.
Lenexa, Kansas 66219

Sarah LaBoda, Esq.
Office of Regional Counsel
Region 7
11201 Renner Blvd.
Lenexa, Kansas 66219
Laboda.Sarah@epa.gov

**As to Defendant:**

Edmund S. Gross, Esquire
Senior Vice President, General Counsel, and Secretary
10 East Cambridge Circle Drive

Suite 250
Kansas City, KS 66103
esgross@CVREnergy.com

Christopher G. Swanberg
Vice President, EH&S
2277 Plaza Drive, Suite 500
Building B
Sugar Land, TX 77479
cgswanberg@CVREnergy.com

Keith Osborn
Vice President and Refinery General Manager
P.O. Box 1566
400 N. Linden
Coffeyville, KS 67337-0945
kdosborn@cvrenergy.com

John Ditmore
Manager, Environmental
P.O. Box 1566
400 N. Linden
Coffeyville KS 67337-0945
jdditmore@CVREnergy.com

LeAnn Johnson Koch, Esquire
Perkins Coie, LLP
700 13th Street N.W.
Washington, D.C. 20005
leannjohnson@perkinscoie.com

73.     Any Party may change either the notice recipient or the address for providing

notices to it by providing the other party with written notice setting forth such new notice

recipient or address.

74.     Notices submitted pursuant to this Section shall be deemed submitted upon

mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties

in writing.

## XVI.  <u>RETENTION OF JURISDICTION</u>

75.    The Court shall retain jurisdiction over this case until termination of this Consent

Decree, for any purpose including resolving disputes arising under this Decree or entering orders

modifying this Decree, pursuant to Sections XII and XVII, or effectuating or enforcing

compliance with the terms of this Decree.

## XVII.  <u>MODIFICATION</u>

76.    Non-material modifications to this Consent Decree shall be in writing and shall be

effective when signed by all Parties.  The United States will file non-material modifications with

the Court on a periodic basis.  For the purpose of this Paragraph, non-material modifications

include, but are not limited to: (i) any modifications to the frequency of reporting obligations;

and (ii) any modifications to schedules that do not extend the date for compliance with Consent

Decree requirements.  Material modifications to this Consent Decree shall be in writing, signed

by the Parties and shall be effective upon approval by the Court.

## XVIII.  <u>TERMINATION</u>

77.    After Defendant has completed the following requirements, the Consent Decree

may be terminated in accordance with the procedures set forth in Paragraphs 78-79 below:

a.    Paid the civil penalty under paragraph 13 and any stipulated penalties;

b.    Completed the Risk Management Program Audits under Paragraph 16 and

submitted the audit reports under Paragraph 17;

c.    Completed the Vessel Audit and submitted the audit report under

Paragraph 18;

d.    Completed the HF Audit and submitted the audit report under

Paragraph 19;

e.      Implemented steps necessary to correct noncompliance under Paragraph 20.  However, this does not include completion of ongoing obligations (including but not limited to ongoing tank inspections) scheduled to be conducted after other requirements contained in this Consent Decree are completed;

f.      Updated the RMP plan in accordance with Paragraph 21;

g.      Completed the Process Hazard Analysis, submitted the compliance schedule and completed the PHA recommendation in accordance with Paragraph 23; and

h.      Complied with the Good Engineering Practices in accordance with Paragraph 22.

78.      Once Defendant has completed the requirements set forth in Paragraph 77 above, it may submit to the United States a Request for Termination.  Following receipt by the United States of Defendant's Request for Termination, the Parties shall confer informally concerning the request and any disagreement that the Parties may have as to whether Defendant has satisfactorily completed requirements for termination of this Consent Decree as detailed in Paragraph 77 above.  If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

79.      If the United States does not agree that the Decree may be terminated, Defendant may invoke Dispute Resolution under Section XII of this Decree.  However, Defendant shall not seek Dispute Resolution of any dispute regarding termination, under Paragraph 57 of Section XII, until 180 days after service of its Request for Termination.

## XIX.  <u>PUBLIC PARTICIPATION</u>

80.      This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the

Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

## XX.  SIGNATORIES/SERVICE

81.     Each undersigned representative of Defendant and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

82.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXI.  INTEGRATION

83.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents.

## XXII.  **FINAL JUDGMENT**

84.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall

constitute a final judgment of the Court as to the United States and Defendant.  The Court finds

that there is no just reason for delay and therefore enters this judgment as a final judgment

under Fed. R. Civ. P. 54 and 58.

SO ORDERED this 2nd day of July, 2013.

Dated and entered this __ day of XXXXXXXXXXXXX

  s/ J. Thomas Marten
J. THOMAS MARTEN
UNITED STATES DISTRICT JUDGE
District of Kansas

WE HEREBY CONSENT to the entry of this Consent Decree subject to the public notice and comment provisions of 28 C.F.R. § 50.7:

**FOR PLAINTIFF THE UNITED STATES OF AMERICA:**

Date: May 21, 2013

ELLEN M. MAHAN
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources
   Division
United States Department of Justice

Date: May 21, 2013

ELIZABETH L. LOEB
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources
   Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 616-8916
Elizabeth.Loeb@usdoj.gov
Member of the New York Bar.

BARRY R. GRISSOM
United States Attorney
District of Kansas


/s/ Emily Metzger
EMILY METZGER
Assistant United States Attorney
301 North Main Street
Wichita, Kansas 67212
(316) 269-6481
Emily.Metzger@usdoj.gov
Kansas Supreme Court Number 10750

# THIS PAGE INTENTIONALLY LEFT BLANK

Date: 5/17/13

KARL BROOKS
Regional Administrator
U.S. Environmental Protection Agency
Region VII

DAVID COZAD
Regional Counsel
U.S. Environmental Protection Agency
Region VII

Date: 5/14/13

SARAH LABODA
Assistant Regional Counsel
U.S. Environmental Protection Agency
Region VII

WE HEREBY CONSENT to the entry of this Consent Decree:

**FOR DEFENDANT COFFEYVILLE RESOURCES REFINING & MARKETING, LLC,**

Date: _5/8/13_

Stanley A. Riemann
Chief Operating Officer

LeAnn Johnson Koch
Perkins Coie, LLP
700 13th Street Street, NW
Washington, DC 20005
(202) 654-6209
Counsel to Defendant Coffeyville Resources
Refining and Marketing, LLC

Agent Authorized to Accept Service for Defendant: